When an indictment leaves every definitional branch of the statute open, we cannot know what the government proved or whether the jury was unanimous. It's not justice and it's not lawful. The case turns on the most basic requirement of due process, and that be that an indictment, fairly, without any uncertainty or ambiguity, inform the accused of what he must defend against. Here the indictment never alleged how any of the charged items were machine guns or destructive devices, which are legal questions. 5861, the statute he was charged under, simply stated. When you ask for a bill of particulars, the way we do this in almost every instance is that when we're talking about the means of satisfying a given element, the question is you ask for a bill of particulars. These are not separate elements. This is the Richardson v. U.S. and Shad v. Arizona. These are different means of satisfying a given element. Is this a machine gun or whatever the particular item is? Typically we say you get a bill of particulars and maybe the court grants it to you, maybe it doesn't, if you have a reason that you need to understand it. It's not an indictment problem. I guess I'm a little confused at your argument, I confess. Patrick Adamiak Your Honor, I think it is an indictment problem and it's especially highlighted when all of the cases that the government points to in support of their proposition that the indictment is sufficient, contain the specific definitional language that would make it clear as to how it was being applied. Your Honor, I resist  Richardson You understand it's a means, right? So like any time you have, so take a 922G charge, right? So it's a little simpler. But you have to show that it's a firearm in order to convict under 922G. Well, there are quite a number of ways to convict somebody for having a firearm, right? So a firearm shows up in a number of different ways, there are different definitions. Nobody thinks that you have to include which definition it is that applies because the element is that it is a firearm. The means of proving that might be, for example, that it is capable of expelling a projectile by means of an explosion or whatever the first definition there is. So that makes total sense. But I've just never, you know, done lots of these, never seen the scenario that these means have to be laid out in the indictment. You might be able to come back if you have a prejudice problem and allege it in a bill of particulars, but I guess I'm struggling to see, and maybe you have examples where they did include it, but the fact that some indictments include more information, I will tell you there are indictments that do not include it. And so I guess that's like not that persuasive to me. The question is like, where do I find a case where the means of proving a given element have to be included in the indictment? So, Your Honor, we're getting pretty down into the weeds of whether these are means or elements, and I would submit that these are materially different prosecutions. That defending against a, for example, incendiary bomb, to use the language from an indictment that the government supported for the position that their indictment was sufficient, right, a destructive device more specifically, an incendiary bomb, that's materially different than defending against a rifle with a large bore that is not for sporting. Those are materially different things that are the same, that Your Honor is suggesting is the same element in 5861. I submit that that couldn't possibly be the case. So you think every 922G prosecution that is done is also an improper indictment? No, Your Honor. Because there are different ways of proving whether something is a firearm. Your argument is that every 922, your argument would have to mean, I mean I think your argument is wrong, I'm not hiding that, right, but it would mean that every 922G case is also invalid. I resist that, Your Honor, because in 922G the definitions aren't internally inconsistent. So the definitions in 922G build upon each other. Oh, no, no, they are, they are internally consistent, right, because some of the definitions, some require able to expel a projectile by means of an explosion, and some specifically do not require that it be able to do so, right? I mean, I actually don't think that works at all. I think that they're progressive, though. They're talking about the same thing in 922G, and admittedly, Your Honor, I haven't really briefed that because that's a separate, yeah, but I think 5861 is materially different because, and as this Court has noticed, in Nieves we had the opposite problem, okay? In Nieves they indicted as to this is a combination of parts, and then instructed the jury with the entirety of 5845, the entirety of the machine gun definition, and they said, that's not permissible. I don't understand how they can accomplish the same harm in reverse. But you're arguing here that the indictment was insufficient, right? So we've made several arguments. I do submit that the indictment... But that's where you started, the indictment's insufficient. But didn't the indictment tell the defendant as to a couple charges that the firearm was a PPSH machine gun, that as to the destructive device, it was an M79 40mm grenade launcher, and another destructive device, RPG, recorreless anti-tank. I mean, wasn't that in the indictment? Anti-tank projector, yes, Your Honor. And if you see in our response brief, we map out the allegations in the indictment. Those words are not in the statute, okay? All of the other cases that the government points to have multiple words that specifically relate to a specific Let's step back, because I mean, I don't want to repeat Judge Richardson, but are you saying that in order for the indictment to be sufficient, that the statute had to include M79 40mm grenade launcher? No, Your Honor, not at all. I think for the indictment to be sufficient, it would have had to clearly, without any uncertainty or ambiguity, identify the offense conduct. And that's not what it did here. It simply said, machine gun. He possessed the grenade launcher. He possessed the recorreless rifle, anti-tank projectile. I mean, what else are they supposed to have told him? It said grenade launcher and anti-tank projector, and neither of those are in the definitions. So Mr. Adamiak is left to guess as to what that is. Respectfully, Your Honor, grenade launcher is not in the statute, unlike incendiary bomb is a specific type of destructive device. One can know what they're defending against. I don't think I understand the argument. Can you tell me in that example, what was the language that you think should have been included? Like, what are the words that were missing? Absolutely, Your Honor. In the case of an M79, or in the case of as the government tried to... Let's just go with the M79. You picked that one first. Let's go with that one. What's the M79? What are the literal words that they had to put in, that if they did not put in, you think the indictment is invalid? Bore over half inch, not suitable or used for sporting purposes. They can't use the word destructive device. No, Your Honor. That's not what I'm saying at all. But that is the definition of a destructive device. It is a definition of a destructive device, Your Honor. It is a definition. And so there are many other destructive devices. For example, incendiary bomb, right? And then for the anti-tank projector, I'm not sure how to define that one. So they have to pick the definition. So what they said here is there's a destructive device. They give you the specific one. And then your answer is that's not specific enough because they have to explain to you which of the three definitions is applicable to that M79 in the indictment. Your Honor, it's more like 10 or 12 definitions. But it's something in the indictment should put the defendant on notice as to the factual basis of the charge. That's not what happened here. No, no, no. You can't say the factual basis of the charge, right? Because that's Staples. In fact, Staples is pretty clear about what the factual basis has to be. You have to be aware of the facts about the M79. And by identifying the M79, there's no doubt about the factual basis. Your Honor, I resist that strongly. I can tell you do it strongly. The question is whether it's well. I totally get that. Grenade launcher is not an item under destructive device. But destructive device is in the statute, right? You agree the destructive device is in the statute and it's in the indictment. Destructive device as defined in 5845. So whether something is a destructive device or not is a legal question based on the factual elements in 5845, those different definitions. The jury is to find whether these facts were present in each particular item, whatever it is. Okay? When they're divergent facts, we have no idea as to what, to put it this way, there'd be no possible way to test the sufficiency of the evidence here because we have no idea whether the jury, for example, all concluded that any particular thing was a incendiary bomb. Whether any particular thing was suitable for sporting purposes. What is the best case you'd have me look at to suggest that those different means are required to be found by the jury unanimously? We do cite in our main brief that something's status as a firearm under the National Firearms Act is a question of law, purely. And so I'd go there and... Well, you just were talking about we don't know what the jury found. I just was answering. I was trying to give you a chance to give me a case to support the point that you just made, which was we don't know whether the jury found this, that, or the other. And what I'm asking you is what is the best case you have, a la Richardson versus United States or Shad versus Arizona, that the jury must find the reason it satisfies the destructive device definition unanimously? The reason... I don't have a case in front of me right now, but I can say that it is a clear defect when we have no idea how an individual was convicted with possessing a destructive device. I totally get that, but that's just to disagree with the Supreme Court, right? That just says that Shad and Richardson versus United States are wrong, which might be right, but that's just a really strong argument to make for us, it seems like to me. Your Honor, the other thing that's really instructive here is that none of these cases, aside from the one which we address in our reply, that specifically it was charged just as a destructive device and this wasn't contested. Every other case, including the government cites Hoover, originally it charged just a machine gun. There was a motion to dismiss an indictment, exactly as there was here. The government came back with, it's a machine gun more specifically, X, Y, and Z. It's not what they did here. To be honest, it necessarily deprives you of notice. You do not, Mr. Demyak did not have notice as to what he was being accused of. It is a materially different prosecution to have to focus on whether something was used for sporting purposes, whether it was a launcher, or whether it was a combination of parts. We still don't know how they thought it was a destructive device. The government didn't even say so in their reply. In this case, there was a general verdict form, is that right? Yes, Your Honor. Did you agree to the general verdict form? Your Honor, I wasn't the counsel there. Who wrote the trial? Did they agree to the general, did they object to it? They objected and they had suggested more specific instructions. I'm sorry, they objected to the general verdict form? No, not the general verdict form. Did they propose special verdict forms to take into account the things you're discussing? Your Honor, that would have been, I don't believe so. But I still believe that the motion for judgment and acquittal and motion to dismiss the indictment should have been granted. Because at the end of the day, it shouldn't be too controversial to say that you have a problem when you send the jury out with the only question here, I think I'm right to say that, and I have case law that we've cited in our main brief, that something's status as a machine gun or destructive device is a legal question. When you send the jury out to say the elements are legal question, that's what they said, that he had an X item, that it was a firearm under the act, and that he knew the act. But the factual question is, does it factually meet one of the definitions? That is a factual question. Whether, the example you keep giving, whether the bore is greater than a half inch in diameter. That's not a legal question. That requires a dude with a ruler. That's something the jury could find as a matter of fact. But here's the other thing, Your Honor. All we know is that the jury was sent into the jury room with a pile of non-functional garbage. It's undisputed that none of the stuff worked as it was found. Well, they probably did not send them in with it, by the way. They maintained them outside for good reasons. And then was given, yes, was given the entirety of 5845 and basically said, figure it out. That's not, that is just not consistent with fair notice and due process. You have to know what you're defending against. Again, because if, and again, let's talk about the M79. That was a point we talked about. The government manufactured the M79. That's undisputed. The government put it together from stuff they found all over the place, right? That's a separate consensus. They probably originally manufactured it too, right? In an M79, a military grenade launcher? Wait, who it manufactured, you're saying? Didn't the U.S. government, in an M79, a military, a U.S. military grenade launcher? It is such a categorization. But no, what I'm saying is that the government assembled it from parts it had found. That's indisputed. So how do we know? Was he being accused of a combination of parts? Or was he being accused of having a non-sporting firearm above a 40 millimeter, or above a half-inch bore? We don't know. Because they refused to articulate the theory of criminality. There was no way to adequately defend against this when the government refuses to articulate this theory in a divergent statute. And so, I guess the real question is, if we're going to insist on allowing the government to indict on the entirety of 5849, it's necessarily vague. Necessarily vague. The only way it's saved is when we say, just like all of the other cases, Your Honor, may I complete my response? Yeah, very briefly. Just like all the other cases, this was a X because of Y. That's it. All right. Thank you very much. You've got some rebuttal time. Ms. Becerra. Good morning, and may it please the Court. Jacqueline Becerra for the United States. I can start with talking about the sufficiency of the indictment. Judge Richardson, you are correct that the element that was required to be specified in the indictment here is a firearm. We know that from the statute that's charged. If we just look at 5861D, it appears that the firearm is a firearm. It prohibits any person from receiving or possessing a firearm, which is not registered to him in the NFRTR. Then it cross-references 26 U.S.C. 5845. That's a definitional section. It starts at the top by saying a firearm includes, as relevant here, a machine gun and a destructive device. Then it goes on to provide various definitions of machine guns and destructive devices. Those are all means of satisfying the overall element of a firearm. Here, each count of the indictment. Is your view that you could do that? Not that you do it, but that you could do that, that you could actually just charge firearm in violation of Title 26 without specifying machine gun, destructive device, short-barreled rifle? I think the answer is yes, under your view. You probably would then have to respond to a bill of particulars, but I take your position to be that you actually could have done even less than you did here? Probably, because our position is that's the element, but I agree with you. I think that would wind up in a bill of particulars. That would have been the appropriate relief, I think, to get at what the defendant's concern is here. I don't think really a bill of particulars would have provided perhaps more facts, although I think Judge Azia is correct that this indictment actually provides all of the necessary facts to defend against these claims because it specifies the date of each possession or receipt, and then that it was knowing the specific firearm that is at issue, the specific, I guess, sub-definition of firearm, either a machine gun or a destructive device that it is alleged to constitute, and then, of course, it charges the statutory code sections, which we know in all of the Rule 7 cases that's basically enough. I think that a bill of particulars would have been the way to get at the sort of factual concerns that my friend has highlighted. However, the defendant never moved for a bill of particulars. But I would push back on the suggestion that the government's evidence at trial was a total surprise. I don't think that's founded. Particularly, you know, we have certain discovery obligations, and of course well in advance of trial we have to produce the expert reports. Just as one example, if you look at the one pertaining to the PPSH-41 is at JA-2454, and the one pertaining to the destructive devices is at JA-2465, and in both instances each expert set forth the applicable statutory definitions and then provided a detailed explanation of basically a visual examination of each firearm, a physical inspection, and then set forth at least one government witness' assessment of how that charged firearm would satisfy the statutory definition. So I would submit that at minimum. Can I ask this question? I might not be looking in the right place. I see destructive device, and there are three different types. Your colleague suggested there were eight or nine, but the three that I see listed here in the actual statute, was the jury instructed on all three of them? So in other words, when the jury got the instruction about the M-79, was it instructed that it could find that to be a destructive device if it was poison gas, which is one of the things that's a destructive device? Do you understand what I'm asking? I understand your question. If you wouldn't mind, if I could just pull it up. No, no, the answer is I don't remember is totally fine. Exactly. Because it might, I'm not sure that it's relevant. So there was one overall instruction setting forth the definition of destructive device. It wasn't specific to, okay, now we're moving to the M-79. I just want to pull them up just so I'm absolutely sure. So I'm at JA-817 now. So it starts with, yes, so they were instructed. They were instructed on basically the entire 5845F pertaining to destructive device, and that was, of course, with the defendant's consent. He didn't object to that. Also, to your point, Judge Agee, earlier, he didn't object to providing the jury a general verdict form rather than a special verdict form, which would have, I guess, provided unanimity that he now says was required. Of course, we don't agree with that because the means of satisfying the firearm requirement, the jury doesn't have to be unanimous as to that. I guess I can touch briefly on the notice issue. The district court was correct in determining that the indictment provided sufficient notice. It's not unconstitutionally vague as applies to the defendant. And, Judge Richardson, I think you were correct to point out that Staples kind of solves this problem. That's what the Supreme Court said it was doing. By reading in the mens rea requirement as to basically having knowledge of the characteristics that bring the firearm within the scope of regulation by the statute, it serves to ensure that we're not criminalizing potentially innocent conduct. Can I just run through two things just to make sure I understand the government's view on them? On the Second Amendment, do you agree that Bianchi sort of controls here and that's sort of the end of that story? I think so. And then on the double jeopardy claim, do you agree that there's a problem and that the problem is because both include possession? Yes. Is that the right way of thinking about it? We have conceded that. I'm just making sure I understand. In theory, you could have charged both of them as long as you didn't include possession in both of them. But once you include possession, we've now got an overlap, and that's the problem. You could, in theory, charge both statutes, one's receipt, one's transfer. But once you put possession in both, I'm not trying to be critical. I'm just trying to make sure I understand the government's position.  That's what makes them a problem under block burner. Yes. And so we would end up sending, we would, I was a little confused by your position there. Okay. Are we, usually there's a recommendation that we vacate one and then send it back for resentencing, but you haven't specified which one. Am I correct? That's correct. I guess I didn't see a requirement in previous cases where that's been the request. The statutory maximum on both counts is the same. So I guess we could work that out in the district court. Of course, our position is that there should be no resentencing. We could vacate the sentence and remand with instructions to dismiss one of the duplicative charges. You could. Now, maybe I've got this confused with another case because this is the end of the week. But I thought there were 220-month sentences assessed, and they were consecutive. Yes. So that would seem to require a resentencing in and of itself, wouldn't it? I'm not sure. Maybe the court could just correct the judgment. But I could double check if the court doesn't. We generally say, I mean, I actually don't know that. But in lots of areas we say sort of sentencing package doctrine means like once we vacate one sentence, at least where that sentence affects the total, it seems like we've got to send it back and let the court reevaluate. Because in theory, based on the other convictions, it could reach the same number if it was so inclined. And I think it will. Well, we can read the transcript. But that's up for the district court to determine. So you've certainly got time if you wish to talk about anything else. But we've read your briefs, and that would be up to you. Unless the court has further questions. All right. Thank you very much.  All right. Mr. Larceri, you've got a little rebuttal time. Thank you, Your Honor. May it please the court. My friend on the other side points to Staples, points to some other cases, just conclusively states that they're instructive here. I don't know how they are. Staples, what characteristics? When we don't know what the particulars are, how can we know that he had knowledge of any particular features? Well, not to beat a dead horse, but it seems like in that circumstance, you just asked for the bill of particulars. So even so, there's still the major question here that these are not, and we can't just point to Yankee, right? These are not normal weapons. These don't work. So we don't get to simply assert dangerous and unusual and avoid a Second Amendment analysis, right? This isn't a facial attack. The Second Amendment question, which we only have to reach after saying that, okay, no, there was fair notice that, however the court might reach that, there wasn't any problem with the jury instruction, there wasn't any problem with, you know, that a reasonable jury properly instructed could have reached this, we now have to assess whether or not the government actually carried its burden under the Second Amendment. The simple Second Amendment allegation was, whatever this is, we're not saying machine guns broadly, destructive devices broadly, whatever this is must then be a accoutrement qualifying as an arm, and including especially the PPSH, which was just a bunch of parts, so necessarily a trigger or a buttstock is a protected part. The government then has the obligation to show some kind of history and tradition of regulating whatever it is out of existence. That has to turn on the facts of this case. And it's undisputed that they don't work. Is there an argument here that as part of the government's case in chief in a case that involved firearms, they have to make a separate presentation in their case in chief to show that the Second Amendment is not violated? Your Honor, that's what Bruin says. Whenever someone articulates a restriction on the right to keep and bear arms, which was articulated below, the government… Right, that's a little different. I mean, certainly if the defendant raises a Second Amendment objection, the government will have to do that. But I'm not aware of the cases where the government's case in chief has to specifically address a Second Amendment claim that's never raised. Your Honor, the Second Amendment claim was raised. Okay. In the motion to dismiss the indictment, and the government refused to address it. That's the problem that's articulated. And we only reached that so far down because we felt that there were so many other off-ramps for the court to take. But if that's where we're heading, it becomes a critical problem that the government never addressed the Second Amendment claim. That was right down below. Can you help me? I still don't understand how you work that under Bianchi. So we have to apply the Bianchi framework. And so I understand the argument that you're making, but Bianchi seems to say we don't have to do that when we have the type of weapons that Bianchi describes, and certainly this seems to fall in that bucket. Your Honor, Bianchi was talking about weapons, actual weapons that worked, that could cast harm against another. So that, your argument is, is like once you sort of partially disassemble these to try to get around the regulations, then that actually limits. Okay, I didn't understand that to be your argument. Your argument is like if we pretend to take these apart, then in that world they can no longer be regulated. Well, your Honor, you're saying pretend. These are not taken apart. They are cut up. It's undisputed that the anti-tank projector, if somebody tried to fire a rocket through it, would, as the government's expert stated, remove the user's head. That's not a weapon. So whatever it is, again, it is parts or whatever. Second Amendment protected accoutrement. You need to show history and tradition of regulating those to the point of locking a man in prison for 20 years for simply possessing them. They didn't even try. They just said we don't have to and pointed to pre-Bruin case law. That's just not how it works. You have to address it with the arms that are before the court. And what's before the court right now is a pile of cut-up, non-working, historical memorabilia that couldn't hurt anyone, and that's undisputed. I see I've run out of time. Thank you so much for your time, Your Honors. All right, we appreciate the argument from both counsel. I'm going to ask the clerk to adjourn court sine die and we'll come down and re-counsel. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: G. Steven Agee, Julius N. Richardson, Nicole G. Berner